UNITED STATES ex rel. BRION v. PRENTIS, United States Inspector.

(District Court, N. D. Illinois. June 29, 1910.)

1. STATUTES (§ 140*)—CONSTRUCTION OF AMENDATORY ACTS—OMISSION OF LIMITATIONS.

Where the legislative body, in amending an act, omits certain limitations expressed in the original act in simple language, plain in its meaning, the presumption of law is that the limitation no longer exists, at least in the absence of other express words showing that it was intended to continue.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 208; Dec. Dig. § 140.*]

2. ALIENS (§ 54*) — EXPULSION OF IMMIGRANTS — ALIEN PROSTITUTES — CONSTRUCTION OF STATUTE.

Under Immigration Act Feb. 20, 1907, c. 1134, § 3, 34 Stat. 899 (U. S. Comp. St. Supp. 1909, p. 450), as amended by Act March 26, 1910, c. 128, § 2, 36 Stat. 264, which provides that "any alien who shall be found an inmate of or connected with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States * * * shall be deemed to be unlawfully within the United States and shall be deported in the manner provided by sections 20 and 21 of this act," there is no limitation of time within which an alien prostitute may be deported to three years from the time of her entry, as was the case under the section before amendment; it being one of the purposes of the amendment to abolish such limitation as to the class of aliens referred to therein.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

Petition by Martha Brion for a writ of habeas corpus directed to P. L. Prentis, United States Immigrant Inspector in charge at Chicago. Writ denied.

Elijah N. Zoline, for petitioner.
Edwin W. Sims, U. S. Dist. Atty., for respondent.

CARPENTER, District Judge. The petition in this case alleged that Martha Brion is a native and citizen of the Republic of France; that she arrived in the United States of America on the 5th day of February, 1906, and since that time has been continuously in this country; that she is held and imprisoned in the county jail of Cook county, Ill., by virtue of a warrant of deportation issued by the Secretary of Commerce and Labor under an act of Congress approved March 26, 1910 (Act March 26, 1910, c. 128, § 2, 36 Stat. 264), amending an act entitled "An act to regulate the immigration of aliens into the United States" (Act Feb. 20, 1907, c. 1134, § 3, 34 Stat. 899 [U. S. Comp. St. Supp. 1909, p. 450]); that the warrant was issued on or about the 6th day of June, 1910, charging the petitioner with being an inmate of a house of ill fame. The petition also sets forth that the imprisonment and detention of Martha Brion is unlawful, for the reason that she had resided in the United States of America for more than three years prior to the issuing of the warrant.

The answer of P. L. Prentis, United States immigrant inspector in charge at Chicago, admitted all of the allegations of the petition, and stated further the specific violation of the law which it was claimed warranted the deportation of the woman. No evidence was introduced as to the character of the woman, or of her conduct while in this country; it being admitted by counsel for the petitioner that the sole question involved was whether or not the United States government could deport a woman at a period more than three years after her arrival in this country.

Section 3 of the act of February 20, 1907, provides:

"That any alien woman or girl who shall be found an inmate of a house of prostitution, or practicing prostitution, at any time within three years after she shall have entered the United States, shall be deemed unlawfully within the United States, and shall be deported, as provided by sections 20 and 21 of this act."

Section 20 provides:

"That any alien who shall enter the United States in violation of law, and such as become public charges from causes existing prior to landing, shall, upon the warrant of the Secretary of Commerce and Labor, be taken into custody and deported to the country whence he came, at any time within three years after the date of his entry into the United States."

Then follows a provision for the payment of costs.

Section 21 provides:

"That in case the Secretary of Commerce and Labor shall be satisfied that an alien has been found in the United States in violation of this act, or that an alien is subject to deportation under the provisions of this act, or of any law of the United States, he shall cause such alien, within the period of three years after landing or entry therein, to be taken into custody and returned to the country whence he came, as provided by section 20 of this act."

Then follows a provision with reference to failure or refusal of vessel owners, masters, or consignees to take back such aliens.

Section 3 of the act of February 20, 1907, was amended by the act of March 26, 1910. This was an engrossed amendment, and

superseded entirely original section 3, and carried with it the last word of Congress with reference to the situation. This amendment was passed after the original act had been in force some three years, and presumably after Congress had before it all of the enlightenment which the experience of the department and those interested in the immigration laws could furnish.

Section 3 of the amendment provides:

"That the importation into the United States of any alien for the purpose of prostitution or for any other immoral purpose is hereby forbidden; and whoever shall, directly or indirectly, import, or attempt to import, into the United States, any alien for the purpose of prostitution or for any other immoral purpose, or whoever shall hold or attempt to hold any alien for any such purpose in pursuance of such illegal importation, or whoever shall keep, maintain, control, support, employ, or harbor in any house or other place, for the purpose of prostitution or for any other immoral purpose, in pursuance of such illegal importation, any alien, shall, in every such case be deemed guilty of a felony, and on conviction thereof be imprisoned not more than ten years and pay a fine of not more than five thousand dollars. Jurisdiction for the trial and punishment of the felonies hereinbefore set forth shall be in any district to or into which said alien is brought in pursuance of said importation by the person or persons accused, or in any district in which a violation of any of the foregoing provisions of this section occur. Any alien who shall be found an inmate of or connected with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States, or who shall receive, share in or derive benefit from any part of the earnings of any prostitute; or who is employed by, in, or in connection with any house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather, or who in any way assists, protects, or promises to protect from arrest any prostitute, shall be deemed to be unlawfully within the United States and shall be deported in the manner provided by sections 20 and 21 of this act. That any alien who shall, after he has been debarred or deported in pursuance of the provisions of this section, attempt thereafter to return to or to enter the United States shall be deemed of a misdemeanor, and shall be imprisoned for not more than two years. Any alien who shall be convicted under any of the provisions of this section shall, at the expiration of his sentence, be taken into custody and returned to the country whence he came, or of which he is a subject or a citizen, in the manner provided in sections 20 and 21 of this act. In all prosecutions under this section the testimony of a husband or wife shall be admissible and competent evidence against a wife or husband."

It will be observed that the amendment, in referring to aliens who shall be found to be inmates of or connected with the management of a house of prostitution, states that they "shall be deemed unlawfully within the United States, and shall be deported in the manner provided by sections 20 and 21 of this act."

What did Congress mean by amending a law which provided that the alien woman found an inmate of a house of prostitution at any time within three years after she shall have entered the United States shall be deported, as provided by sections 20 and 21, and substituting a provision which omitted altogether the words "at any time within three years after she shall have entered the United States," and substituting, for the words "shall be deported as provided by sections 20 and 21 of this act," the words "shall be deported in the manner provided by sections 20 and 21 of this act"? There is no question whatever as to the meaning of the original section 3. The

three-year limitation was unambiguous and not open to judicial construction. We cannot suppose, therefore, that Congress, in enacting the amendment, omitted that limitation by accident or inadvertence. It must have been done deliberately and with some purpose, and in this conclusion we are supported by the debates in Congress at the time of its passage. See Congressional Records, vol. 45, pp. 518, 551, 552, 578, 873, where it appears that those favoring the bill stated expressly that the amendment to section 3 did away with the three-year limitation.

Where the legislative body, in amending an act, omits certain limitations expressed in the original act in simple language, plain in its meaning, the presumption of law is that the limitation no longer exists, at least in the absence of other express words showing that it was intended to continue. Neither ambiguous nor uncertain language will prevail against such an express omission.

It is claimed in this case that, inasmuch as section 20 provides that the alien may be deported upon the warrant of the Secretary of Commerce and Labor within three years after the date of his entry into the United States, and that section 21 provides that the Secretary of Commerce and Labor shall cause the alien, within a period of three years after landing or entry, to be taken into custody, and deported, the three-year limitation is preserved, notwithstanding the omission in the amendment to section 3. I do not agree with this contention. I believe that sections 20 and 21 have regard primarily to the method of deportation, and proper provision for meeting the cost. Standing alone they amount to nothing as legislation. They depend entirely upon the preceding provisions of the law, and especially upon section 3. They cover the administrative features of the act only, and both refer for the subject and causes of deportation to the prior provisions of the act. It was quite natural, although unnecessary, that Congress, in sections 20 and 21, should have authorized the Secretary of Commerce and Labor to issue his warrant and deport the offending alien at any time within three years after the date of entry into the United States, because the substantive law governing the action of the Secretary originally provided in express terms that such deportation should take place within that length of time. If Congress had stated in express terms in the amendment to section 3 that the limitation period of three years was thereby repealed and no longer in effect, then I undertake to say that sections 20 and 21 would be read in connection with section 3 as amended, and that the Secretary of Commerce and Labor would not be restricted to the three-year period within which to issue his warrant of deportation.

While we find no express words repealing the three-year limitation in the amendment to section 3, yet, as I have already stated, Congress has accomplished the same result by the deliberate omission of that limitation from the amendment.

The views here expressed are fortified by that portion of amended section 3 which provides:

"That whoever shall keep, maintain, control, support, employ or harbor in any house or other place, for the purpose of prostitution or for any other im-

182 F.—57

moral purpose in pursuance of such illegal importation, any alien, shall, in every such case, be deemed guilty of a felony, and on conviction thereof be imprisoned not more than ten years and pay a fine of not more than five thousand dollars. * * * Any alien who shall be convicted under any of the provisions of this section shall, at the expiration of his sentence, be taken into custody and returned to the country whence he came or of which he is a subject or a citizen, in the manner provided in sections 20 and 21 of this act."

From this it is apparent that an alien may be convicted of maintaining another alien for the purpose of prostitution, and sentenced to be imprisoned for 10 years, and after the expiration of the sentence be deported "in the manner provided in sections 20 and 21." If the contention of petitioner's counsel is correct, namely, that the three-year limitation is preserved in sections 20 and 21, then there could be no deportation of the convicted alien unless his sentence expired within three years from the time of his entry into this country. Petitioner's counsel also claims that the 10-year sentence applies only to those "who keep, maintain, control, support, employ, or harbor" the alien in the manner prohibited by the statute, and does not apply to the alien, but to a citizen. The answer to that is that the inhibition of the statute is against "whoever shall keep, maintain, control," etc., and the word "whoever" is broad enough to include not only the citizen but also the alien who violates the law with respect to other aliens; and we see no reason for restricting the meaning of the word "whoever," especially as it is a well-known fact that for years the traffic in prostitutes in this country has been carried on by aliens. The provision for deporting the convicted alien after the expiration of the sentence shows clearly that the three-year limitation was intended to be destroyed by the amendment.

The change of the words in the original act, "shall be deported as provided by sections 20 and 21 of this act," to the words "shall be deported in the manner provided by sections 20 and 21 of this act," might, under ordinary circumstances, be regarded as insignificant, and as indicating a desire on the part of the scrivener to adopt another method of expressing the same meaning; but taken in connection with the fact that Congress has expressly omitted from section 3, as amended, any reference to the 3-year limitation, and considering the provision for the deportation of the convicted alien at the end of a possible 10-year sentence, it indicates more or less clearly that it was intended that the reference to sections 20 and 21 was merely for the purpose of determining the manner in which the deportation should be made, as distinguished from the time and under what circumstances it should be made.

No question has been made as to the power of Congress to regulate at all times the status and conduct of aliens; nor was it contended that the act of March 26, 1910, was not binding upon the alien in this case because she arrived in this country on the 5th day of October, 1906. Those questions, therefore, will not here be discussed.

I am of the opinion, however, that aliens, as such, have no rights in this country except as declared by Congress, and that Congress

may at any time pass laws regulating their conduct and providing for their exclusion.

The petition will therefore be dismissed, and the petitioner remanded to the custody of the immigration officer.