## Case No. 16,470.

### UNITED STATES v. THIRTY-THREE BARRELS OF SPIRITS.

[1 Lowell. 239; [1] 1 Abb. U. S. 311; 7 Am. Law Reg. (N. S.) 365; 7 Int. Rev. Rec. 75; 1 Am. Law T. Rep. U. S. Cts. 47.]

District Court, D. Massachusetts. March, 1868.

INTERNAL REVENUE—ILLICIT DISTILLERIES—FORFEITURE OF TOOLS, ETC.

To warrant a forfeiture of tools, implements, instruments, or other personal property, under section 48 of the internal revenue act of 1864 (13 Stat. 240), as amended by the act of 1866 (14 Stat. 111), upon the ground that they are found upon premises where an illicit manufacture is carried on, it should appear that such property was used, or intended to be used in such manufacture, or was in some way connected with it.

[Cited in U. S. v. Sixteen Barrels of Distilled Spirits, Case No. 16,300; U. S. v. Curtis, 16 Fed. 189.]

This was an information filed against the contents of a building upon Central wharf in Boston, to enforce a forfeiture under the internal revenue law. The property was claimed by John Lombard. Upon the trial

[1] [Reported by Hon. John Lowell. LL. D., District Judge, and here reprinted by permission.]

it appeared that the building in question was of four stories in height. In the attic story there was a still, and here, as the evidence indicated, a business of distilling had been carried on in violation of the revenue law. The second and third stories contained barrels, chemicals, and other articles of a character adapted to the distilling business. The first floor was occupied by a retail grocery store, and contained a stock of goods such as are ordinarily kept for that business. The counsel for the government contended that all the property found in the building was forfeited; and the jury found a verdict condemning the entire property accordingly. The claimant now moved for a new trial and in arrest of judgment.

W. A. Field, Assist. U. S. Dist. Atty.
L. S. Dabney, for claimant.

LOWELL, District Judge. In this case there is a motion for a new trial, on the ground that the verdict is against the weight of the evidence; and a motion in arrest of judgment. The information, as amended, alleges in the fifth count that certain distilled spirits were found at number 45 Central wharf, Boston, in the possession, custody, and control of one John Lombard, for the purpose of being sold by him. in fraud of the revenue laws; that two hogsheads of molasses were found at the same place in the possession of said Lombard, and were raw materials which he intended to manufacture into distilled spirits, for the purpose of fraudulently selling the same, and evading the taxes thereon, and that the other goods, wares, merchandise, and property seized, which appear to form the stock, furniture, and fixtures of a retail dealer in liquors and groceries. were tools, implements, instruments, and personal property found at the same time and in the same building with the spirits and the molasses, and in the possession. custody, and control of the said Lombard.

The other amended counts differ from the fifth count, in substance, only as to the person in whom the custody is alleged to be.

The law under which the information is brought is section 48 of the act of 1864 (13 Stat. 240, c. 173), as amended by the act of 1866 (14 Stat. 111, c. 184). As the act stood at first, all goods, &c., on which duties are imposed, which shall be found in the possession, &c., of any person for the purpose of being sold or removed in fraud of the internal revenue laws. may be seized and shall be forfeited; and so of raw materials intended to be manufactured for the purpose of being so sold; and also all tools, implements, instruments, and personal property whatsoever, in the place or building, or within any yard or enclosure where such articles are found, and intended to be used by them (i. e., the persons before mentioned) in the manufacture of such raw materials. The new statute amends the phraseology of this section in several other particulars, without perhaps much variation of the meaning, but omits altogether the qualifications of intended use of the tools, implements, instruments, and personal property, and upon a literal interpretation might seem to subject to seizure and forfeiture all goods and chattels and other things coming within the very general description of personal property, to whomsoever they may belong, if found in the same building, including out-buildings, yard, &c., with the offending goods. It is impossible to believe that any such sweeping condemnation is intended to be passed, founded upon mere proximity in place, upon the goods of all persons, innocent and guilty. In its application to a city or other busy place, where the same building is divided into numerous tenements, shops, offices, counting-houses, and warerooms, all being often found under one roof, and each occupied by a different tenant, the operation of such a law would work the most enormous and unheard of injustice. To take a single example: the money in the vaults of a bank might be forfeited for the fault of some petty trader in the attic of the banking-house. It is a rule of law as well as of natural justice, that statutes will not be understood to forfeit property except for the fault of the owner or his agents, general or special, unless such a construction is unavoidable. See Peisch v. Ware, 4 Cranch [8 U. S.] 347; Trueman v. Four Hundred & Three Quarter Casks of Gunpowder. Thacher, Crim. Cas. 14.

This information does indeed allege that the personal property sought to be confiscated was in the possession or under the control of the wrong-doer. But even if the statute be limited in that way, it will be most arbitrary and unjust in its operation. for the punishment will bear no sort of necessary relation to the offence. The crime is punished by the same section with a fine of five thousand dollars, or double the amount of tax; but this forfeiture may be indefinitely greater than either. But the more valid reason against this construction is, that nothing in the statute itself points to the possession or control of this personal property as deciding its status, but only the place where it is found. A forfeiture of the goods of the same owner, found with the unlawful goods, is not without precedent in revenue laws, and I was at first disposed to believe that such was the meaning of the statute, but upon a more careful inquiry, I am satisfied that the construction presently to be mentioned. is more consistent with its language. By reason and analogy, as well as by the context, we find that some real connection with the fraud is intended to be attached to the property that is liable to seizure. The taxed articles and the raw materials intended to be manufactured. are the principal things, and the tools, imple-

ments, instruments and personal property, are only the connected incidents. I am of the opinion that by the familiar rule of construction, called noscitur a sociis, we must restrict the general words, personal property, by the more particular and immediately preceding words, tools, implements, and instruments. Such a restriction has been adopted in many well considered cases. Thus, where it was enacted that no tradesman, artificer, workman, laborer, or other person whatsoever, should do or exercise any worldly labor, business, or work of their ordinary callings upon the Lord's day, the court of king's bench held unanimously that this did not include drivers of stagecoaches. Sandiman v. Breach, 7 Barn. & C. 96. So any artificer, calico printer, handicraftsman, miner, collier, pitman, keelman, glassman, potter, laborer, "or other person" who shall contract with any person whomsoever, for any time or times, does not include domestic servants. Kitchen v. Shaw, 6 Adol. & E. 729, 1 Nev. & P. 791.

Other examples of a restricted construction of the general words of a statute are, Rex v. Manchester & S. Water Works, 1 Barn. & C. 630; Rex v. Mosley, 2 Barn. & C. 226; Coolidge v. Williams, 4 Mass. 140; Sprague v. Birdsall, 2 Cow. 419. And in the construction of deeds and wills, it is not unusual to confine general expressions by a regard to the context. Thus, "all my estate of what kind soever" being connected with words referring only to chattels, was held not to pass real estate. Sanderson v. Dobson, 1 Exch. 141. In the present case, the words "tools, implements, and instruments." are carelessly used, and are mere surplusage, if the general words "personal property" are intended to include them. Why mention tools and implements if everything but real estate is to be confiscated? And if any specification is desired, why not specify the property much more important, and more likely to be found in such a connection; namely, the stock in trade, notes, money, &c., before the general words? It cannot be doubted that the tools, implements, and instruments here forfeited, are those with which the unlawful business is carried on; and if that is so, does not their enumeration exclude all other tools, implements, and instruments? If a carpenter's tools, a surgeon's instruments, or a dressmaker's sewing-machine are found in a distillery, can they be forfeited as tools, implements, and instruments? If not, and if they are tools and implements, how can they be swept in as "personal property"? It must be on the very ground that they are not connected with the fraud, and then the statute will read thus: "All tools, implements, and instruments of the unlawful business shall be forfeited, together with all other tools, implements, instruments, and personal property, which have no such connection." No fair, sensible, or reasona-

ble construction can be given to the particular words, without supplying the qualification which I have adopted; and when you have supplied that, it restricts the operation of the more general words which follow, and the statute is read as forfeiting the tools, implements, instruments, and personal property connected with the illegal business, and found within the building, yard, or enclosure where that business is carried on. This construction gives effect to all the language, because there are often many things connected with a trade or manufacture which are not properly described as either tools, implements, or instruments; as, for example, fuel, fixtures, &c.

This construction entirely relieves the difficulty concerning the place or building, yard or enclosure, because it is reasonable that all things which are part of the unlawful business, and are found within the same enclosure, whether inside or outside of the building, should be forfeited, and that all articles appropriate to such business which are so found, should be prima facie presumed to be connected with the fraud. This interpretation makes the whole law just, harmonious, and intelligible. New trial granted.