## In re HURLEY.

District Court, W. D. New York. January 11, 1930.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y. (Joseph J. Doran, Asst. U. S. Atty., of Rochester, N. Y., of counsel), for the United States.

Hugh J. O'Brien, of Rochester, N. Y., for petitioner.

ADLER, District Judge. A search warrant was issued by a United States commissioner of this district on December 18, 1929, for the search of premises described in the warrant as a two-story frame building located on Alexander street in the city of Rochester, N. Y., and bearing the number 270. The warrant states that the building was

equipped as a residence. It sets forth sales of intoxicating liquor made on the premises. The warrant was issued under section 1185, title 26, USCA, formerly Rev. St. 3453. The warrant directed the seizure of intoxicating liquor and of all personal property of every description in the premises. It was executed by prohibition agents of the Bureau of Prohibition on the evening of December 18, 1929. The return on the warrant discloses that there was seized six pints of whisky and one and one-half ounces of whisky. In addition to the intoxicating liquor, the agents executing the warrant seized and removed all of the personal property found in the premises. This consisted, according to the return, of a large number of articles, including, chairs, tables, sofas, rugs, lamps, curtains, draperies, beds, bedding, dressers, bureaus, two radios, a baby grand piano, and other household furniture of every description.

The petitioner makes application to this court for the return of all of the property seized except the intoxicating liquor. The contention of the petitioner is that section 3453 of the Revised Statutes (26 USCA § 1185) directs the seizure of personal property other than contraband only when found in a distillery, rectifying establishment, tobacco or cigar factory, or in any place where the person in whose possession it is found, was manufacturing, or intending to manufacture, articles of a kind subject to tax.

The search and seizure was made under the Internal Revenue Statutes of the United States. The authorities might have proceeded to search and seize under the provisions of the National Prohibition Act (27 USCA). If they had done so, they could have taken nothing from the premises except the contraband liquor. They chose to proceed under the Revenue Statute, section 3453 (26 USCA § 1185), and under that statute they took from the premises, not only the intoxicating liquor, but every bit of personal property, in this case hundreds of items of household furniture.

The question to be decided here is whether section 3453 (26 USCA § 1185) by its terms authorizes the seizure and forfeiture of all of the personal property on the premises in this case.

Section 3453 (26 USCA § 1185) reads as follows:

"Section 1185. *Same; seizure.* All goods, wares, merchandise, articles, or objects, on which taxes are imposed, which shall be found in the possession, or custody, or within the control of any person, for the purpose of being sold or removed by him in fraud of the internal-revenue laws, or with design to avoid payment of said taxes, may be seized by the collector or deputy collector of the proper district, or by such other collector or deputy collector as may be specially authorized by the Commissioner of Internal Revenue for that purpose, and shall be forfeited to the United States. And all raw materials found in the possession of any person intending to manufacture the same into articles of a kind subject to tax for the purpose of fraudulently selling such manufactured articles, or with design to evade the payment of said tax; and all tools, implements, instruments, and personal property whatsoever, in the place or building, or within any yard or inclosure where such articles or raw materials are found, may also be seized by any collector or deputy collector, as aforesaid, and shall be forfeited as aforesaid. The proceedings to enforce such forfeitures shall be in the nature of a proceeding in rem in the district court of the United States for the district where such seizure is made. (R. S. § 3453.)"

It was derived from section 48 of the Act of June 30, 1864 (13 Stat. 240). The act of 1864 differs from the section in its present form, and is as follows:

"And be it further enacted, That all goods, wares, merchandise, * * * or objects on which duties are imposed by the provisions of law, which shall be found in the possession or custody, or within the control, of any person or persons, for the purpose of being sold or removed by such person or persons in fraud of the internal revenue laws, or with design to avoid payment of said duties, may be seized by any collector or deputy collector, who shall have reason to believe that the same are possessed, had, or held for the purpose or design aforesaid, and the same shall be forfeited to the United States; and also all articles of raw materials found in the possession of any * * * persons intending to manufacture the same for the purpose of being sold by them in fraud of said laws, or with design to evade the payment of said duties and also all tools, implements, instruments, and personal property whatsoever, in the place or building, or within any yard or enclosure where such articles on which duties are imposed, as aforesaid, and intended to be used by them in the fraudulent manufacture of such raw materials, shall be found, may also be seized by any collector or deputy collector, as aforesaid; and the same shall be forfeited as aforesaid." Section 48, Act of June 30, 1864.

In 1866 (14 Stat. 111) the section was amended by striking out the words, "on which duties are imposed, as aforesaid, and intended to be used by them in the fraudulent manufacture of such raw materials." There were some other slight changes which did not affect the meaning of the section. The punctuation in the 1866 statute remained the same as in the 1864 statute. When the Revised Statutes were compiled, the section was put in its present form. It was then that the punctuation was changed.

An examination of this statute shows that it is divided into three parts. In the statute as it is to-day, the first part is included all in one sentence, which ends at the period after the words, "United States." The second part is included in one sentence which is the second sentence of the paragraph, and ends at the period after the word "forfeiture." The other sentence of the paragraph beginning with the words, "the proceedings," and ending with the words "is made," applies to both the preceding sentences.

The first part of section 3453 as it is to-day provides for the seizure and forfeiture of all goods, wares, merchandise, or objects possessed or dealt with in fraud of the Internal Revenue Laws. The second part, comprised in the second sentence of the clause, provides for the seizure and forfeiture of raw materials, and all tools, implements, and instruments and personal property in the place or building and in the possession of any person intending to manufacture the same into articles of a kind subject to tax.

The question to be determined is whether the provision which is found in the second part of the section for the seizure of personal property applies also to the first part of the section. If it does, then the procedure in the present case is authorized. If it does not, then the household furniture which was taken from the premises of the petitioner must be returned to her. If the right to seize the entire contents of a building applies only to the places where the contraband article is being fabricated, and does not apply to the case where the contraband article in its finished state is found in the custody or possession of some person, then the furniture and fittings taken from the premises in this case must go back. In other words, reading the first part of the section by itself, there is no authority to seize anything more than the contraband article. In endeavoring to ascertain the intent of the legislation, I have quoted this section as it was passed in 1864. It will be noted that the section as it stood then consists of one single long sentence. There is a semicolon after the words "United States," where in the section as it is to-day there is a period. The division of the section into two parts, in this case by the semicolon, is clear. The first part refers to articles in possession, and the second part to the manufacture of contraband articles. There is in the act of 1864 one phrase, "on which duties are imposed, as aforesaid, and intended to be used by them in the fraudulent manufacture of such raw materials," which was omitted when the section was put into its present form.

In studying the section, Rev. St. 3453 (26 USCA § 1185), in order to reach a conclusion as to its real meaning, I am able to get little assistance from the history of the legislation. There is very little data on which a conclusion as to the legislative intent can be reached.

I have examined the Record of the House of Representatives and of the Senate on the dates when the amendment of this section was made in 1866. In the House of Representatives the clerk read the amendment, and Mr. Morrill moved to strike out the words taken out at that time and insert certain other words. There was no discussion, and the amendment was passed. The Senate agreed to the House amendment without discussion.

The form in which the statute was in 1864, which I have quoted, is unambiguous on the point under discussion. Under the 1864 statute there is no question that personal property could be seized only in the building where manufacturing was done. The words making that clear were taken out by the amendment of the section in 1866. It might be said that these words were taken out in order to change the meaning of the section and make the seizure of the personal property apply to any place where the nonpaid taxed article was found, and not only to the place where it was being manufactured. I am not convinced, however, that that was the reason why these words were taken out. With these words in, the meaning of this part of the section was confusing because as it read it seemed to say that the articles on which duties are imposed must be intended to be used in the fraudulent manufacture of raw materials. Of course that was never intended, and in the very next session of Congress the section was amended. It is evident that the amendment was made to clarify that point and not to change the clear intent which was evident before the amendment that seizure of personal property could be made only where manufacturing took place.

This conclusion is supported by a careful reading of the section in its present form. The first part of the section, comprising the first sentence, is complete in itself. It specifies, goods, wares, merchandise, articles, or objects, and says that under certain circumstances they shall be seized and forfeited. The first clause in the next sentence down to the semicolon refers to raw materials in the possession of any person intending to manufacture the same into articles, subject to tax for the purpose of fraudulently selling such manufactured articles or to evade the tax. It is contended that this part of the section down to the semicolon sets up a second class of articles to be seized. It must be noted, however, that the words "seizure" and "forfeiture" are not repeated as to the raw materials. It is further contended that a third class of property is authorized to be seized, to wit, personal property in the place or building where the contraband articles or the raw materials are found. The reasoning is that the words "such articles or raw materials," as found in the part of the section in which the seizure of personal property is authorized, refer to articles as set forth in the first sentence of the section, and raw materials as set forth in the beginning of the second sentence of the section. If that were the intention, it should have been expressed by making that part of the section referring to raw materials complete in itself, and provide for seizure and forfeiture as it did in the first sentence. Then the sentence beginning "All tools," etc., which would set up the third class of property to be seized, would begin with a capital as did the second sentence beginning, "And all raw materials." But that was not done, and the part of the section relating to raw materials and that part of the section relating to tools, implements, instruments, and personal property is all in one sentence, and the words authorizing seizure and forfeiture are at the end of it. This would seem to indicate, according to the usual rules of grammatical construction, that it was all to be read together.

As I construe the statute, the words "such articles," where they appear in the phrase "within any yard or inclosure where such articles or raw materials are found," refer back only to the word "articles" toward the beginning of the sentence where they occur, and to the words "such manufactured articles" which appear in the same sentence a little farther on. Under the construction I have adopted only such other personal property can be seized which is found in the place or building where manufacturing takes place.

I believe that the intent of the legislation in the matter of the seizure of other personal property which was clearly expressed in the statute in the form in which it was passed in 1864 was not changed by the taking out of certain words by the amendment of 1866. These words were taken out for a different purpose. I believe that the statute in its present form, when submitted to all the tests of statutory construction, still means that other personal property may be seized only in places where the contraband articles are being fabricated. I do not believe that it was ever intended that the finding of half a dozen bottles of non-tax paid liquor would work a confiscation of the entire contents of a large building used as a rooming house, or of the entire contents of a drug store or a department store in which they might be found or authorize the seizure and removal and forfeiture of all of the furniture and fittings of a great hotel. I have had my attention called to but, a single case in which the contention of the government in this particular is upheld. That is the case of United States v. Sixteen Barrels of Distilled Spirits, reported in 27 Fed. Cas. 1098, No. 16,300. This was decided in the Southern District of New York in 1879, and the opinion in that case suggests a limitation in the language of the statute to the particular place where the articles were found in order that it may not be so drastic in its operation as to be unreasonable.

In two other cases, United States v. Quantity of Tobacco, 27 Fed. Cas. 650, No. 16,106, and United States v. One Still, 27 Fed. Cas. 317, No. 15,954, the first decided in the Southern District of New York in 1872, and the second decided in the Circuit Court of the Eastern District of New York in 1867, the opinions suggest the construction of the statute contended for by the government, but in both of those cases personal property seized was in connection with manufacturing.

In United States v. Thirty-Three Barrels of Spirits, 28 Fed. Cas. 72, No. 16,470, Judge Lowell in the Eastern District of Massachusetts in 1868, commenting on the then recent change in this same statute, says:

"The new statute amends the phraseology of this section in several other particulars, without perhaps much variation of the meaning, but omits altogether the qualifications of intended use of the tools, implements, instruments, and personal property, and upon a

literal interpretation might seem to subject to seizure and forfeiture all goods and chattels and other things coming within the very general description of personal property, to whomsoever they may belong, if found in the same building, including ⁑ * * yard, etc., with the offending goods. It is impossible to believe that any such sweeping condemnation is intended to be passed."

He goes on further to say that the operation of such a law would work the most enormous and unheard of injustice, and that, even if the statute were limited in its construction in a manner suggested by him, "it will be most arbitrary and unjust in its operation, for the punishment will bear no sort of necessary relation to the offense."

Since 1879, so far as disclosed by reported cases, the Department of Internal Revenue of the United States has not availed itself of this statute to seize personal property other than the contraband goods, except in the case of a distillery or manufactory of some kind. The Department of Prohibition is now attempting to make seizures under this old revenue statute. The case under discussion and a number of other cases now before me are in fact ordinary violations of the National Prohibition Law (27 USCA). That act furnishes an adequate remedy, and in the judgment of Congress adequate punishment for its violation. It is not necessary or desirable for the Prohibition Department to try to operate under an old taxing statute which, while technically in force was not intended to be used to enforce the Eighteenth Amendment to the Constitution.

In view of the conclusion I have arrived at on the construction of the statute, I will not discuss other questions raised on the argument of this application.

The personal property seized other than the intoxicating liquor should be returned to the applicant.